UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:14-cv-80265-KAM

STANLEY STREICHER and MARSHA
STREICHER,

      Plaintiffs,

vs.

U.S. BANK NATIONAL ASSOCIATION
and U.S. BANK NATIONAL
ASSOCIATION AS SUCCESSOR
TRUSTEE OF THE WELLS FARGO
ASSET SECURITIES CORPORATION,
MORTGAGE PASS-THROUGH
CERTIFICATES 2005-AR16,

      Defendants.

_____/

**OPINION AND ORDER**

      This matter is before the Court on Plaintiffs, Stanley and Marsha Streicher's Motion for

Summary Judgment (DE 34) and Defendants, U.S. Bank National Association as Successor Trustee

to Wachovia Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation,

Mortgage Pass-Through Certificates Series 2005-AR16 ("U.S. Bank") and U.S. Bank National

Association's Motion for Summary Judgment (DE 38), which are both ripe for review. For the

following reasons, the Court grants Defendants' motion for summary judgment and denies Plaintiffs'

motion for summary judgment.

**I. Introduction**

      When filing a complaint, it is important for the party with the interest in the outcome to have

the case filed in its own name rather than in someone else's. Wells Fargo Bank, N.A. ("Wells Fargo"), the mortgage servicer for U.S. Bank, learned this the hard way when it initiated a state-court foreclosure action against the Streichers not "as agent for" nor "as servicer for" but simply *as* U.S. Bank. Wells Fargo filed a complaint that named U.S. Bank as the plaintiff; it did not name Wells Fargo in any capacity. At trial, Wells Fargo showed up; U.S. Bank did not. After Wells Fargo failed to prove that it had any authority from U.S. Bank to act on its behalf, the state court dismissed the case for lack of standing. The question before this Court is whether that dismissal has any res judicata effect against U.S. Bank. The Court concludes that it does not.

## II. Background and Procedural History

On June 9, 2010, a mortgage foreclosure action was commenced against Stanley and Marsha Streicher in Florida state court. (DE 37-1.) The plaintiff was U.S. Bank National Association as Successor Trustee to Wachovia Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates Series 2005-AR16—or so it seemed. (DE 37-1.)

At the mortgage foreclosure trial, plaintiff's counsel announced his appearance, "Luis Ugaz on behalf of the plaintiff, *Wells Fargo Bank, N.A.*" (DE 30-1 at 4:18–19 [hereinafter "Trial Tr."]) (emphasis added). Apparently, it did not trouble anyone that counsel stated that he represented an entity different from the plaintiff listed in the caption and in the body of the complaint. After counsel for both sides made their appearances, the trial court asked for the caption of the case. Wells Fargo's counsel responded, "It's U.S. Bank  National Association as Successor and Trustee for Wachovia Bank National Association as Trustee for Wells Fargo Assets Securities Corporation Mortgage Pass Through Certificate Series 2005-AR16 versus Stanley Streicher." (Trial Tr. 5:15–19.) Again, no one

questioned why he stated a case caption with a plaintiff different from the entity he just said he represented.

Counsel for Wells Fargo then called his first and only witness, a Wells Fargo employee.[1] (Trial Tr. 6:25–7:21.) Tacitly acknowledging the named plaintiff's absence, he asked the witness, "What is the relationship of your employer to the named plaintiff in this case?" (Trial Tr. 7:22–23.) Still, no one questioned where U.S. Bank was or why a lawyer for a non-party was conducting the plaintiff's case-in-chief. In any event, the witness explained that Wells Fargo serviced the loan. (Trial Tr. 7–24.) At one point, during the Streichers' counsel's voire dire of the Wells Fargo employee, the employee explained that "[w]e're the servicer for U.S. Bank" and "[t]hat's who we're foreclosing in the name of." (Trial Tr. 12:22–24, 15:24–16:3.) She also stated that she was not an employee of U.S. Bank. (Trial Tr. 31:8–14.) Yet again, no one questioned (or explained) how Wells Fargo could foreclose "in the name of" another entity.

After the close of plaintiff's case-in-chief, the Streichers moved for an involuntary dismissal. (Trial Tr. 58:11–14.) During argument on the motion, the issues of Wells Fargo's absence from the complaint and U.S. Bank's absence from trial finally became crystalized:

> The Court: In this case, this witness has testified that the name of the servicer is Wells Fargo Bank, N.A. and that's – that company is not named in the complaint, in the caption at all.
>
>           \*\*\*
>
> The Court: Here we have a case where the evidence being presented is by a party not even named in the pleading.

---

[1] Actually, Wells Fargo's counsel first made a pretrial motion for default (which was immediately denied) on the ground that Stanley Streicher, who Wells Fargo's counsel acknowledged was on his way, was not in the courtroom (even though his attorney was). (Trial Tr. 6:6–12) ("According to the trial order all parties have to be here, so we move for a default against the opposing party since they're not here at the – at the trial right now."). Ironically, it never occurred to Wells Fargo's counsel that the named plaintiff (and its attorney) was also not present at trial.

***

The Court: You're telling us that your client is U.S. Bank; correct? That's whom you've been retained, but you're here representing U.S. Bank and appearing through you?

Mr. Ugaz: No, I'm here on behalf of Wells Fargo Bank, Your Honor.

***

The Court: Wells Fargo is not here as a named party. You said you're appearing on behalf of Wells Fargo who is not even -- neither a plaintiff nor a defendant here.

***

The Court: But the problem is that this servicer, Wells Fargo Bank, N.A., is not the named plaintiff.

***

The Court: Well, the problem is that, at least in that case, C.W., the servicer, was the named plaintiff. Here the testimony is that the servicer is Wells Fargo Bank, N.A. and that's not even in the case caption.

***

The Court: Here, you don't even have a complaint filed by -- Wells Fargo Bank, N.A.

(Trial Tr. 111:17–20, 113:10–11, 114:25–115:4, 115:13–15, 119:8–9, 121:16–19, 123:21–22.)

After much discussion and argument, the court discovered the reason for the confusion. Counsel for Wells Fargo provided the court with an internal document providing instructions for foreclosure cases, which included an instruction to state the plaintiff's name in the complaint as it was stated in this case. (Trial Tr. 124:5–126:17.) After reviewing the document, the court said, "[S]omebody inside of Wells Fargo said file a lawsuit and file it this way. . . . I don't know what this proves. It doesn't say who is sending it, it doesn't say who is receiving it, but it does show that somebody screwed up inside of the Wells Fargo empire." (Trial Tr. 126:12–17.) The court then granted the motion for involuntary dismissal. (Trial Tr. 126:25–127:2.)

While the Streichers raised several grounds for dismissal, the state court's basis for granting the dismissal was lack of standing due to Wells Fargo's failure to prove that U.S. Bank authorized it to bring suit on its behalf. The Streichers' motion for involuntary dismissal relied on

4

*Elston/Leetsdale, LLC v. CWCapital Asset Mgmt. LLC*, 87 So. 3d 14, 15 (Fla. Dist. Ct. App. 2012).

(Trial Tr. 58:25–60:4.) The *Elston/Leetsdale* court held that a servicer lacks standing to prosecute

a foreclosure action when it fails to demonstrate that it is authorized by the owner of the loan

documents to sue on its behalf. *Id.* at 17–18 ("CW relies on nothing more than its own allegations

and affidavit to support its argument that it has standing to sue on behalf of the trust. This is

insufficient evidence to prove that it is authorized to sue on the trust's behalf.").

> The Streichers argued that *Elston/Leesdale* applied in this case:
>
> What's missing here is the following. Wells Fargo Home Mortgage, Inc. or Wells Fargo Bank, N.A. is suing as the servicer on behalf of U.S. Bank National. U.S. Bank National has to authorize, has to ratify those actions.
>
> In the cases that we gave to Your Honor, they did it by affidavit and the appellate court said that's fine. However, in [*Elston/Leesdale*] the Fourth DCA said they didn't try to put on an affidavit saying we're authorized to do this, they didn't put on any testimony saying we're authorized to do this, therefore, their [sic] acting out here as the servicer without ratification so, therefore, they haven't presented their case.
>
> ***
>
> Based on the case we cited, Your Honor, they needed someone to come in here from U.S. Bank National Association to say we ratify, we authorize the actions taken by this servicer.

(Trial Tr. 64:3–14; 68:12–15.) Paraphrasing *Elston/Leesdale*, the Streichers continued:

> [L]et's substitute C.W. for Wells Fargo Bank, N.A.
>
> Wells Fargo Bank, N.A. relies on nothing more than its own testimony, take out allegations and affidavit; relies upon its own testimony to support [its] argument *that it has standing to sue on behalf of the trust*. And that's what is taking place here. They're trying to say we can sue on behalf of U.S. Bank National Association, the trustee. And that's forgetting another critical link in this case that they haven't proven.

(Trial Tr. 108:5–13) (emphasis added). The Court agreed that, under *Elston/Leesdale*, Wells Fargo

failed to prove that it had standing. (Trial Tr. 87:17–19 ("The Court: You've got a burden of proof

as the plaintiff to prove the basic elements of your case. One of them is standing."); 111:9–12 ("So if I understand this, and its import to our case, it would have to be necessary for Wells Fargo Bank, N.A., for which this witness works, to show that the trustee joined or ratified its action."); 113:10–17; 122:14–20; 135:12–16 ("[T]he plaintiff has the obligation to prove the authorization of the trustee and it failed to do it by the evidence presented. You've had a full trial and you haven't done it. So I think I'm bound by the case.")[4]

After the court granted the dismissal, the parties argued about whether the order should say the case is dismissed with or without prejudice. While the court offered what it acknowledged was only non-binding conjecture regarding the preclusive effect of the dismissal (Trial Tr. 128:1–3, 128:20–129:2, 132:25–133:13), the court chose not to decide whether the case should be dismissed with or without prejudice: "And I don't think -- I don't have to say with or without prejudice . . . . I'm saying I'm going to add the words this case is hereby dismissed and I'm going to leave it at that. That will allow the clerk to close the case." (Trial Tr. 129:4–11.)

The Streichers subsequently brought this action, which as stated in their operative complaint is against U.S. Bank National Association and U.S. Bank National Association as Successor Trustee

---

[4] The Court rejects the Streichers' argument that the dismissal was not based on a lack of standing. The state court's decision was based on *Elston/Leesdale*, which is a case about standing. Even the Streichers argued in state court that this was an issue of standing. (Trial Tr. 108:5–13.) The Streichers characterize the dismissal as based on a failure of proof that Wells Fargo's actions were authorized by U.S. Bank. That is true enough. But the legal effect of that failure of proof was a lack of standing, which the state court held warranted dismissal under *Elston/Leesdale*. Indeed, the *Elston /Leesdale* court treated a lack of authorization and a lack of standing as interchangeable. 87 So. 3d at 15 ("Because CW did not properly plead *standing*, we reverse." (emphasis added)); *id.* at 17–18 ("CW relies on nothing more than its own allegations and affidavit to support its argument *that it has standing to sue on behalf of the trust*. This is insufficient evidence *to prove that it is authorized to sue on the trust's behalf*." (emphasis added)). The Streichers' mere disagreement over whether the dismissal was based on a lack of standing does not create a genuine issue of material fact.

to Wachovia Bank, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates Series 2005-AR16. (DE 25 ¶¶ 5–6.) The Streichers seek a declaratory judgment that the dismissal of the prior state foreclosure action has a preclusive effect on future actions by U.S. Bank to enforce the promissory note underlying their mortgage. The Court previously dismissed, among other things, Plaintiffs' declaratory judgment claim to the extent it sought a declaration that the dismissal rendered the promissory note entirely unenforceable. (DE 22 at 7.) But the Court allowed the claim to proceed to the extent it sought a declaratory judgment that the note is unenforceable as to some amount less than the entire amount due under the note. (DE 22 at 7–8.) Plaintiffs then filed their operative amended complaint, which survived another motion to dismiss as to the declaratory judgment claim. (DE 25; 32.)  The parties each moved for summary judgment. The Court held a hearing on the parties' motions.

### III. Legal Standard

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. To discharge this burden, the

7

movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249–50.

### IV. Discussion

As a preliminary matter, Defendants are correct that Plaintiffs violated the Court's Local Rules by failing to file any statement of undisputed material facts to accompany their motion for summary judgment. *See* Local Rule 56.1(a). Instead, under the heading "Statement of Undisputed Facts," Plaintiffs preface their motion with the following statement: "Contemporaneous with the filing of this motion Plaintiffs have filed the transcript of the proceedings held before the Hon.

8

Kenneth Stern on September 27, 2013. The testimony and evidence therein are the undisputed facts necessary for resolution of this motion." (DE 34 at 1.) The purpose of Local Rule 56.1(a) "is to make review of summary judgment motions less burdensome by directing the Court to the proper portions of the record to make its decision, rather than having the Court aimlessly search the record for relevant evidence, or the lack of evidence, to support or refute a claim." *D & M Carriers, LLC v. M/V Thor Spirit*, No. 11-80722-CIV, 2012 WL 4747198, at *3 (S.D. Fla. Oct. 4, 2012). Plaintiffs' filing of a 137-page transcript in lieu of a statement of facts flouts this purpose.

Nevertheless, "while a court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement." *Reese v. Herbert*, 527 F.3d 1253, 1271 (11th Cir. 2008) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)). Even though Plaintiffs' violation of Local Rule 56.1 is sufficient grounds for denial of their motion, the Court exercises its discretion to rule on the merits.[5]

Turning to the merits, Defendants are entitled to summary judgment (and Plaintiffs are not) if the state court's involuntary dismissal of the foreclosure action has no preclusive effect as a matter of law. This Court must give the state court order of involuntary dismissal the same preclusive effect as another Florida state court would give it. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) (citing Full Faith and Credit Act, 28 U.S.C. § 1738). Under Florida law, res judicata may apply only if there has been a prior adjudication on the merits. *State Street Bank & Trust Co. v. Badra*, 765 So. 2d 251, 254 (Fla. Dist. Ct. App. 2000).

---

[5] Because Defendants also moved for summary judgment, the Court would have to rule on the merits of that motion even if it denied Plaintiffs' motion for summary judgment on procedural grounds.

9

Florida's involuntary dismissal rule provides, "Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal *for lack of jurisdiction* or for improper venue or for lack of an indispensable party, operates as an adjudication on the merits." Fla. R. Civ. P. 1.420(b) (emphasis added). Here, the state trial court entered an order of involuntary dismissal based on a lack of standing.[6] Thus, a threshold issue is whether the reference to a dismissal for lack of jurisdiction under Rule 1.420(b) encompasses a dismissal for lack of standing.[7] If it does, then the involuntary dismissal of the prior foreclosure action is not an adjudication on the merits and cannot have any preclusive effect.[8]

---

[6] Though the parties dispute whether the state trial court's decision was proper, the Court expresses no opinion on the correctness of the state trial court's decision. The state trial court's decision was to dismiss the foreclosure action for lack of standing. The issue before the Court is the *effect* of that decision; it is not whether the state trial court correctly applied Florida's standing doctrine, should not have dismissed the case, or should have dismissed the case on a different ground.

[7] Because the parties did not address this issue in their motions for summary judgment, the Court invited the parties to file supplemental briefs on this issue. (DE 52.) In response, Plaintiffs argued that a dismissal for lack of standing is never jurisdictional under Florida law. Interestingly, Defendants argued that standing is jurisdictional under Florida law in certain situations, but that this case *does not* present one of those situations. Defendants identify case law stating that standing is indeed jurisdictional under Florida law, which would compel summary judgment in their favor, but then make a strenuous effort to *distinguish* these cases. Even more curious is that one of Defendants' affirmative defenses is: "Dismissal of a case for lack of standing is the equivalent of dismissal of a case for lack of subject matter jurisdiction and therefore the involuntary dismissal of the foreclosure action was not a judgment on the merits." (DE 33 at 8.) It is unclear why Defendants now take a position that conflicts with one of their stated defenses. Nevertheless, even if the parties agree that the state court's dismissal for lack of standing was not a dismissal for lack of jurisdiction, the Court must undertake its own analysis to determine the correctness of that conclusion.

[8] On February 1, 2016, Defendants' filed *Brown v. M & T Bank*, __ So.3d __, 2016 WL 347183 (Fla. Dist. Ct. App. 2016), as supplemental authority. In *Brown*, Florida's Fifth District Court of Appeal held that the dismissal of a foreclosure action for lack of standing does not operate as an adjudication on the merits for purposes of res judicata. 2016 WL 347183, at *1. The *Brown* court provided no analysis, did not reference Rule 1.420(b), did not discuss whether standing was jurisdictional under Florida law, and relied solely on a string citation of non-Florida case law. While the Court agrees with *Brown*'s conclusion and is generally bound by a state intermediate appellate court's decision

10

At first glance, the Florida Supreme Court seems to have made conflicting statements as to whether standing is jurisdictional. In *Krivanek v. Take Back Tampa Political Committee*, the Florida Supreme Court stated that lack of standing is a waivable affirmative defense. 625 So. 2d 840, 842 (Fla. 1993) ("The issue of standing should have been raised as an affirmative defense before the trial court, and Krivanek's failure to do so constitutes a waiver of that defense, precluding her from raising that issue now."). But only five-and-a-half weeks later, the Florida Supreme Court stated: "The determination of standing to sue concerns a court's exercise of jurisdiction to hear and decide the cause pled by a particular party." *Rogers & Ford Const. Corp. v. Carlandia Corp.*, 626 So. 2d 1350, 1352 (Fla. 1993). While these cases appear to conflict, they can be reconciled.

Almost 90 years ago, the Florida Supreme Court observed that there was "some confusion" about the meaning of the term "subject matter jurisdiction."  Specifically, the court stated:

> There is some confusion in the use of this term 'subject-matter' in some of the cases dealing with the question of jurisdiction. Sometimes it is applied with reference to the power of the court to deal with the class of cases to which the particular case belongs, and sometimes it is applied to the res within the court's control or under its jurisdiction, or to the rights—that is, the questions of personal or property rights, the controversy—before the court in the particular case. The rule that jurisdiction of the subject-matter, in the general abstract sense—the power of the court to adjudicate the class of cases to which the particular case belongs—cannot be conferred by the acquiescence or consent of the parties is so universally recognized as to require no citation of authority. The kind of jurisdiction referred to by this rule is the power conferred on the court by the sovereign—which means with us the Constitution or statute, or both—to take cognizance of the subject-matter of a

---

on a matter of state law, the Court provides an analysis of the relevant Florida law to reach that conclusion given the potentially conflicting statements of the Florida Supreme Court discussed *infra*. *See Fid. Union Trust Co. v. Field*, 311 U.S. 169, 177–78  (1940) ("An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, *in the absence of more convincing evidence of what the state law is*, should be followed by a federal court in deciding a state question." (emphasis added)). In other words, before relying solely on *Brown*, the Court must ensure that there is an "absence of more convincing evidence of what the state law is." *Id.*

11

litigation and the parties brought before it, and to hear and determine the issues and render judgment upon the issues joined. . . . 'Jurisdiction of the subject-matter is the power to deal with the general abstract question, to hear the particular facts in any case relating to this question, and to determine whether or not they are sufficient to invoke the exercise of that power.' But before this potential jurisdiction of the subject-matter—this power to hear and determine—can be exercised, it must be lawfully *invoked* and called into action; the parties and the subject-matter of the particular case must be brought before the court in such a way that it acquires the jurisdiction and the power to act. . . . The jurisdiction and power of a court remain at rest until called into action by some suitor; it cannot by its own action institute a proceeding sua sponte. . . . So that, when it is said that a court has jurisdiction of the subject-matter of any given cause, if these words are to be given their full meaning, they imply, generally speaking: (1) That the court has jurisdictional power to adjudicate the class of cases to which such case belongs; and (2) that its jurisdiction has been *invoked* in the particular case by lawfully bringing before it the necessary parties to the controversy; (3) the controversy itself by pleading of some sort sufficient to that end; and (4) when the cause is one in rem, the court must have judicial power or control over the res, the thing which is the subject of the controversy.

*Lovett v. Lovett*, 112 So. 768, 775–76 (Fla. 1927) (citation omitted). The *Lovett* court recognized a narrow definition of subject-matter jurisdiction "in the general abstract sense," but explained that the term's "full meaning" included both "potential jurisdiction of the subject-matter" *and* its proper invocation. *Id. Lovett*'s discussion of subject-matter jurisdiction seems to confirm that "the power of the court to adjudicate the class of cases to which the particular case belongs" is only one element of subject-matter jurisdiction, but a court has subject-matter jurisdiction over a case only if (along with other requirements) it is properly invoked by the "necessary parties to the controversy," i.e., those with standing. *Id.*; *cf. Byrom v. Gallagher*, 609 So. 2d 24, 26 (Fla. 1992) ("[O]nly persons who have standing can participate in a judicial proceeding.").

Despite this clarification, after *Lovett* the Florida Supreme Court continued to use the term "subject-matter jurisdiction" in its narrower sense in certain cases. *See Cunningham v. Standard Guar. Ins. Co.*, 630 So. 2d 179, 181 (Fla. 1994) ("In *Lovett*, this Court explained that subject-matter

12

jurisdiction concerns the power of the trial court to deal with a class of cases to which a particular case belongs."). For example, where a writ of prohibition is sought, "'[t]he question is not whether the court has jurisdiction of the particular case sought to be prohibited, but whether or not it has jurisdiction of the general class of cases to which the particular case belongs.'" *Crill v. State Rd. Dep't*, 117 So. 795, 798 (1928) (citation omitted); *see also id.* (citing *Lovett* for the proposition that "[j]urisdiction of the subject-matter means the power of the court to adjudicate the class of cases to which the particular case belongs").

In other cases, the Florida Supreme Court has, consistent with *Lovett*, stated that a court's subject-matter jurisdiction must be properly invoked for the court to have power over the case, or has referred to the other elements of subject-matter jurisdiction, as identified in *Lovett*, as being jurisdictional. *See Ruth v. Dep't of Legal Affairs*, 684 So. 2d 181, 185 (Fla. 1996) ("*To have subject matter jurisdiction* in an in rem proceeding, a court must have both the jurisdictional authority to adjudicate the class of cases to which the case belongs *and* jurisdictional authority over the property which is the subject matter of the controversy." (citing, *inter alia*, *Lovett*, 112 So. at 775) (emphasis added)); *Roberts v. Seaboard Sur. Co.*, 29 So. 2d 743, 750 (1947) ("'On the other hand, an entire failure to invoke the court's jurisdiction over the subject matter or an attempt to do so in a manner wholly inadequate to bring the court's powers into activity would prevent any valid determination of the case.'" (citation omitted)); *Hollywood, Inc. v. Clark*, 15 So. 2d 175, 181 (1943) ("As regards the question of jurisdiction, the term 'jurisdiction of the subject matter' has frequently been interpreted and its meaning is pretty well understood. It means the power of the court to adjudicate the class of cases to which the particular case belongs. Of course that potential appellate jurisdiction must be lawfully invoked." (citing, *inter alia*, *Lovett*, 112 So. 768)).

It thus appears that there are two types of "subject-matter jurisdiction" under Florida law. First, there is jurisdiction of the subject matter itself, which is simply "the power of the court to adjudicate the class of cases to which the particular case belongs." *Lovett*, 112 So. at 775–76. As discussed in *Lovett*, lack of this type of subject-matter jurisdiction is not waivable; it cannot be conferred by consent. *Id.* at 775. Second, there is "jurisdiction of the subject-matter of [the] cause." *Id.* at 776 (referring to the "full meaning" of "jurisdiction of the subject-matter of any given cause"); *cf. Crill*, 117 So. at 798 (distinguishing between "jurisdiction of the particular case" and "jurisdiction of the general class of cases to which the particular case belongs"). This type of subject-matter jurisdiction has a broad, "full meaning" definition, which includes "the power of the court to adjudicate the class of cases to which the particular case belongs" as well as other requirements—most importantly that the court's jurisdiction is properly invoked. *Lovett*, 112 So. at 775–76. *Lovett* is silent as to whether defects in meeting these additional requirements, though jurisdictional, are ever waivable.

Confusion over the term "subject-matter jurisdiction" and its relation to standing has led to conflicting district court of appeal decisions. *Compare Ferreiro v. Phila. Indem. Ins. Co.*, 928 So. 2d 374, 378 (Fla. Dist. Ct. App. 2006) ("[S]tanding is a threshold determination necessary for the maintenance of all actions . . . ."); *Askew v. Hold The Bulkhead-Save Our Bays, Inc.*, 269 So. 2d 696, 698 (Fla. Dist. Ct. App. 1972) ("Standing has been equated with jurisdiction of the subject matter of litigation and has been held subject to the same rules, one of which is that jurisdiction of the subject matter (thus standing to bring suit) cannot be conferred by consent."), *overruled on other grounds by Save Sand Key, Inc. v. U. S. Steel Corp.*, 281 So. 2d 572 (Fla. Dist. Ct. App. 1973), *quashed*, 303 So. 2d 9 (Fla. 1974); *Silver Star Citizens' Comm. v. City Council of Orlando*, 194 So.

14

2d 681, 682 (Fla. Dist. Ct. App. 1967) ("The record shows no right of the petitioners to bring the suit. This left the circuit court with lack of jurisdiction over the subject matter." (internal citations omitted)), *with Godfrey v. Reliance Wholesale, Inc.*, 68 So. 3d 930, 932 (Fla. Dist. Ct. App. 2011) ("We do not agree that a circuit court that otherwise had jurisdiction over the subject matter, i.e., 'the general power of the court over the case,' would lose such jurisdiction because the plaintiff may lack standing.").

Perhaps to avoid the confusion arising from describing two separate, but related, concepts as "subject-matter jurisdiction," some Florida courts refer to the second type of subject-matter jurisdiction as "case jurisdiction." *See T.D. v. K.D.*, 747 So. 2d 456, 457 n.2 (Fla. Dist. Ct. App. 1999) ("We use the word 'jurisdiction' advisedly even though it has different meanings, each with different implications. Ordinarily we use this word to refer to 'subject matter' or 'personal' jurisdiction. There is a third meaning-more logically designated as 'case' jurisdiction-which involves the power of the court over a particular case that is within its subject matter jurisdiction.").[9] Florida courts have held that, at least in some circumstances, defects in case jurisdiction are waivable. *See MCR Funding v. CMG Funding Corp.*, 771 So. 2d 32, 35 (Fla. Dist. Ct. App. 2000) (holding that failure to object to trial court's exercise of jurisdiction after it lost case jurisdiction waived the issue on appeal).

Even though a defense is waivable, it may still be jurisdictional. For example, in both federal and state court, the defense of lack of personal jurisdiction is waivable. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982); *Babcock v. Whatmore*, 707 So. 2d

---

[9] The Florida Supreme Court has recognized yet another type of jurisdiction, called "continuing jurisdiction," which appears to be a subset of case jurisdiction. *See Paulucci v. Gen. Dynamics Corp.*, 842 So. 2d 797, 801 n.3 (Fla. 2003).

702, 704 (Fla. 1998). But a dismissal for lack of personal jurisdiction is still a dismissal for "lack of jurisdiction" under Rule 1.420(b) and its federal counterpart, Federal Rule of Civil Procedure 41(b). *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) ("[I]n declaring that a dismissal for lack of jurisdiction does not 'operate[ ] as an adjudication upon the merits,' Rule 41(b) does not distinguish between subject matter and personal jurisdiction."); *Cypress Fairway Condo. Ass'n, Inc. v. Cypress Madison Ownership Co.*, 163 So. 3d 730, 731 (Fla. Dist. Ct. App. 2015) ("Cases interpreting Federal Rule of Civil Procedure 41, the federal counterpart to rule 1.420, are useful in interpreting rule 1.420."). The same appears true under Florida law as to case jurisdiction. While under certain circumstances a defense of lack of case jurisdiction may be waivable, it does not necessarily follow that such a defense is not jurisdictional.

This explains how the Florida Supreme Court could say in *Krivanek* that lack of standing is waivable, 625 So. 2d at 842, and five-and-a-half weeks later in *Rogers & Ford* say that "standing to sue concerns a court's exercise of jurisdiction *to hear and decide the cause pled by a particular party*." 626 So. 2d at 1352 (emphasis added). It appears that in *Rogers & Ford*, the Florida Supreme Court was referring to what some district courts of appeal call "case" jurisdiction rather than subject-matter jurisdiction in its strict sense. If the standing requirement is an aspect of case jurisdiction, it may simultaneously be jurisdictional and waivable under Florida law.

It is unclear whether under Florida law standing is considered a part of a court's case jurisdiction or a court's subject-matter jurisdiction (or whether standing can be an aspect of either type of jurisdiction depending on the circumstances). As noted *supra*, at least some district court of appeal decisions state that standing concerns subject-matter jurisdiction. Also, a year after *Krivanek* and *Rogers & Ford*, the Florida Supreme Court stated in the declaratory judgment context that the

16

requirement that "there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter"—*i.e.*, the standing requirement—is "necessary in order to maintain the status of the proceeding as being judicial in nature and therefore *within the constitutional powers of the courts*." *Dep't of Revenue v. Kuhnlein*, 646 So. 2d 717, 721 (Fla. 1994) (quoting *May v. Holley*, 59 So. 2d 636, 639 (Fla. 1952) (emphasis added)). Elevating standing to a constitutional requirement conflicts with the holding in *Krivanek* that lack of standing may be waived. Relatedly, it is also unclear to what extent a lack of standing is waivable. *See Maynard v. Fla. Bd. of Educ. ex rel. Univ. of S. Fla.*, 998 So. 2d 1201, 1205–06 (Fla. Dist. Ct. App. 2009) (holding that lack of standing is waived if raised for the first time on appeal as in *Krivanek*, but that it may be raised at any time in the trial court, including post-verdict). These questions, however, are not before the Court.

What is relevant here is that the Florida Supreme Court has said that "the doctrine of standing certainly exists in Florida," *Kuhnlein*, 646 So. 2d at 720, and that it "concerns a court's exercise of jurisdiction." *Rogers & Ford*, 626 So. 2d at 1352. Even if standing does not affect *subject-matter* jurisdiction under Florida law, at the very least standing is part of what some courts call "case jurisdiction" and what the *Lovett* court referred to as jurisdiction over the subject matter of the cause. Rule 1.420(b) uses the phrase "lack of jurisdiction"; it does not specify any type of jurisdiction, whether it be subject-matter, personal, case, or some other type of jurisdiction. Other rules refer to different types of jurisdiction separately, evidencing that when a rule refers solely to "jurisdiction" it does so in a collective sense. *See* Fla. R. Civ. P. 1.140(4)(b) (referring separately to "lack of jurisdiction over the subject matter" and "lack of jurisdiction over the person"). The Court thus interprets Rule 1.420(b)'s reference to jurisdiction to refer to all types of jurisdiction. *Cf. Paulucci*

17

*v. Gen. Dynamics Corp.*, 842 So. 2d 797, 801 n.3 (Fla. 2003) ("Jurisdiction is a broad term that includes several concepts, each with its own legal significance."). Thus, regardless of whether standing is part of subject-matter jurisdiction or case jurisdiction, standing is jurisdictional within the meaning of Rule 1.420.[10]

## V. Conclusion

Rule 1.420(b) excepts certain inherently non-merits based dismissals, including those for lack of jurisdiction, from the default rule that involuntary dismissals are adjudications on the merits. The Court concludes that the reference to dismissals for lack of jurisdiction in Rule 1.420(b) encompasses dismissals for lack of standing. Therefore, the dismissal for lack of standing in the prior foreclosure action was not an adjudication on the merits and consequently has no res judicata effect as a matter of law.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendants' motion for summary judgment (DE 38) is **GRANTED** and Plaintiffs' motion for summary judgment (DE 34) is **DENIED**. The Court will enter a separate final judgment consistent with this Order. Any pending

---

[10] Indeed, it seems that the rule's intent is not to give a dismissal preclusive effect when it is based on a court's lack of power over the case, regardless of whether the defense divesting the court of such power is waivable. Case jurisdiction embraces a court's power to hear a case (even if it has jurisdiction over the class of cases to which it belongs). When a party lacks standing, it cannot invoke the court's jurisdiction to hear the particular case even if the court otherwise has jurisdiction over the subject matter of the class of cases to which the particular case belongs. *Roberts*, 29 So. 2d at 750 ("'[A]n entire failure to invoke the court's jurisdiction over the subject matter or an attempt to do so in a manner wholly inadequate to bring the court's powers into activity would prevent any valid determination of the case.'" (citation omitted)); *Lovett*, 112 So. at 775 ("The jurisdiction and power of a court remain at rest until called into action by some suitor . . . .").

motions are **DENIED AS MOOT**. The Clerk shall **CLOSE** this case.

       **DONE AND ORDERED** in chambers at West Palm Beach, Palm Beach County, Florida,

this 14th day of March, 2016.

                                          _____
                                          KENNETH A. MARRA
                                          United States District Judge